# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO
# LEWIS T. BABCOCK, JUDGE

Civil Action No. 05-cv-00089-LTB

JOSÉ G. TRUJILLO,

    Plaintiff,

v.

DENVER ZOOLOGICAL FOUNDATION, INC.,

    Defendant.

___

# ORDER
___

This employment case is before me on Defendant, Denver Zoological Foundation's ("Foundation"), Motion for Summary Judgment [**Docket # 64**] and supporting Brief [**Docket # 65**], Plaintiff, José G. Trujillo's, Brief in Opposition [**Docket # 72**], and Defendant's Reply [**Docket # 75**]. Oral arguments would not materially assist the determination of this motion. After consideration of the motion, pleadings, and the case file, and for the reasons stated below, I GRANT Defendant's motion in part, and DENY Defendant's motion in part [**Docket # 64**].

## I. BACKGROUND

Defendant is a not-for-profit organization that administers and manages the Denver Zoo pursuant to a cooperative agreement with the City and County of Denver ("City"). Historically, most workers at the Denver Zoo remained City employees, although their salary and benefits came out of Defendant's budget. In November 1998, Defendant entered into a new agreement that provided an opportunity for critical Zoo staff to be converted from City employees to Foundation employees. Plaintiff held one of these critical positions: Operations Manager.

On September 1, 1999, Defendant sent a letter to Plaintiff ("offer letter"), which stated, in its entirety:

> Dear José:
>
> In accordance with the joint cooperative agreement between the City and County of Denver and the Denver Zoological Foundation, Inc., I am writing to offer you the opportunity to become a Foundation employee. Please note that your conversion to Foundation employment would be entirely voluntary on your part and there is no time deadline associated with this offer.
>
> If you are interested in exploring employment with the Denver Zoological Foundation, I request that you contact Dr. Brian Klepinger, Executive Vice President & Chief Operating Officer for an appointment to discuss the matter.
>
> I sincerely hope that you will give very serious consideration to joining the ranks of Foundation employees.
>
> Sincerely,
> [signature]
> Clayton F. Freiheit
> President/CEO

Upon receiving this letter, Plaintiff contacted Freiheit and explained that he was four years away from his retirement with the City in 2003 and would not be interested in converting to Foundation employment before that time.

In 2003, the City offered employees an additional two months retirement pay if they retired by December 31, 2003. Plaintiff accepted the City's offer and contacted Dr. Klepinger to discuss the possibility of becoming a Foundation employee. Dr. Klepinger informed Plaintiff by letter on October 22, 2003 that—in light of a pending vote on amendments to the City charter that would allow any City employee to convert to a Foundation employee—"[I]t is highly unlikely that we will have time to meet to consider your request until sometime in December or after the first of the year. . . . [E]ven if we were to meet, we would most likely be unable to give you any

2

specific answer in response to your request until final approval of the 2004 budget by the Board of Trustees." In response, Plaintiff e-mailed Freiheit's assistant on October 28, 2003, stating, in relevant part: "In asking for a meeting with Mr. Freiheit, . . . I was trying to . . . let Mr. Freiheit know that timing is very important in my making a decision to retire and convert to Denver Zoological Foundation employment. . . . The timeline that [Mr. Freiheit] suggests will not allow me to make decisions which will affect my taxes, and I will not be able to take advantage of the incentives offered by the [City] Retirement Plan . . . . Therefore, I will not have the incentive to retire after the first of the year. My plan then would be to continue working in my City position for two or three more years."

Freiheit telephoned Plaintiff on October 29, 2003, and told Plaintiff he was unable to offer employment with the Foundation at that time. Despite these communications, Plaintiff gave official notice to the City that he was retiring from his position effective December 31, 2003. On December 22, 2003, Plaintiff wrote Dr. Klepinger, stating: "This is my formal request to become an employee of the Denver Zoological Foundation beginning on January 1, 2004." Dr. Klepinger responded on December 24, 2003: "[W]e are unable to act upon any such requests at this time." Plaintiff proceeded to retire on December 31, 2003. Upon Plaintiff's retirement, Plaintiff's position was dissolved and his job duties were distributed among other positions.

## II.  STANDARD OF REVIEW

The purpose of a summary judgment motion is to assess whether trial is necessary. *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). If a reasonable juror could not return a verdict for the non-moving party, summary judgment is proper and there is no need for a trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is not proper

if—viewing the evidence in a light most favorable to the non-moving party and drawing all reasonable inferences in that party's favor—a reasonable jury could return a verdict for that party. *Mares v. ConAgra Poultry Co., Inc.*, 971 F.2d 492, 494 (10th Cir. 1992).

The non-moving party has the burden of showing there are specific issues of material fact to be determined. *Celotex*, *supra*, 477 U.S. at 322. It is not enough that the evidence be merely colorable; the burden is on Plaintiff to come forward with specific facts showing a genuine issue for trial. *Id.*; *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A fact is material if it might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). I shall grant summary judgment, therefore, only if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Lucas v. Mountain States Tel. & Tel.*, 909 F.2d 419, 420 (10th Cir. 1990); FED. R. CIV. P. 56(c).

In a motion for summary judgment, I view the evidence "through the prism of the substantive evidentiary burden." *Liberty Lobby*, *supra*, 477 U.S. at 254. The inquiry is based on "the quality and quantity of evidence required by the governing law" and "the criteria governing what would enable the jury to find for either the Plaintiff or the defendant." *Id*. Accordingly, in an employment discrimination, breach of contract, or promissory estoppel case—all of which maintain an underlying evidentiary burden of proof by a preponderance of the evidence—the non-moving party must show material facts in dispute by a preponderance of the evidence in order to defeat a motion for summary judgment. Plaintiff meets this burden if he sets forth evidence that—if believed by the ultimate factfinder—makes the question of Defendant's wrongdoing more

4

likely than not.  *See*, *e.g.*, COLO. JURY INSTR., CIVIL 3:1 (2006) ("To prove something by a 'preponderance of the evidence' means to prove that it is more probably true than not.").

## III.  DISCUSSION

### 1.  First and Fourth Claims for Relief—Title VII and § 1981 Race and National Origin Discrimination

In an employment discrimination case, I apply the three step burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973).  A party's failure to meet the burden allocated to it under each step entitles the opposing party to summary judgment.  *See, e.g., Cordova v. West*, 925 F. Supp. 704, 708 (D. Colo. 1996) (discussing cases).

Initially, the burden rests with Plaintiff to establish a *prima facie* case of discrimination. *McDonnell Douglas*, *supra*, 411 U.S. at 802.  This may be done by showing (1) he belongs to a protected minority; (2) he was qualified for a job for which the employer was seeking applicants; (3) despite his qualifications, he was rejected; and (4) after his rejection, the position remained open and the employer continued to seek applications from persons with Plaintiff's qualifications. *Id.*  The *McDonnell Douglas* test is flexible, however, and other tests may be used so long as the underlying inquiry is whether Plaintiff has shown actions taken by Defendant from which one can infer it is more likely than not that such actions were based on discriminatory criteria.  *Hysten v. Burlington N. & Santa Fe R.R. Co.*, 296 F.3d 1177, 1181 (10th Cir. 2002).

If Plaintiff establishes a *prima facie* case, the burden then shifts to Defendant to "articulate some legitimate, nondiscriminatory reason" for its employment action.  *McDonnell Douglas*, *supra*, 411 U.S. at 802–03.  The proffered reason must be sufficient to allow the conclusion—if

5

taken as true by the factfinder—that there was a nondiscriminatory reason for the adverse employment action. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993). Credibility and persuasiveness are not considered at this step: Defendant need not persuade me that it was actually motivated by the proffered reason. *Id.*; *Farmer v. Colo. & S. R.R. Co.*, 723 F.2d 766, 768–69 (10th Cir. 1983).

Finally, if Defendant articulates a nondiscriminatory reason, the burden shifts back to Plaintiff to show the proffered reason is merely a pretext for discrimination. *McDonnell Douglas*, *supra*, 411 U.S. at 804. Plaintiff may do this by persuading me that a discriminatory motive was more likely than the motive proffered by Defendant, or by persuading me that Defendant's proffered explanation is unworthy of credence. *Farmer*, *supra*, 723 F.2d at 768.

Applying the *McDonnell Douglas* factors, Plaintiff is an Hispanic citizen, and a member of a protected class. At the time of his retirement, Plaintiff had been a Zoo employee for seventeen years. There is no doubt or dispute he was qualified for his job as Operations Manager and that he was not hired for this position by Defendant. However, Plaintiff fails to show by a preponderance of the evidence that material facts exists regarding whether Defendant was seeking applicants for the Operations Manager position or whether he was treated differently from other similarly-situated employees outside of Plaintiff's protected class.

Plaintiff presents no specific facts that show the Foundation was seeking applicants for the Operations Manager position. Quite the opposite is true. When Plaintiff contacted Defendant in October 2003, he was repeatedly informed Defendant was unable to offer him employment due to ongoing structural reorganization within the Foundation. When Plaintiff retired from the City—from the very same position he sought with Defendant—the position was dissolved and his

job duties were distributed among existing positions. No person—of a protected class or otherwise—was hired to replace Plaintiff or to fill the position for which Plaintiff applied. Under *McDonnell Douglas*, Plaintiff must allege that he was seeking a position that was available. Defendant's actions show not only that Plaintiff's desired job was unavailable, but that his present position was superfluous. Plaintiff raises no issue of material fact to counter these facts.

Plaintiff argues that his case should be treated as a failure to transfer, not a failure to hire. This distinction is of no help. In the Tenth Circuit, a Plaintiff alleging a discriminatory failure to transfer must still allege he was qualified for a job for which his employer was seeking applicants. *See Amro v. Boeing Co.*, 232 F.3d 790, 797 (10th Cir. 2000). Plaintiff's discussion of *Freeman v. Potter*, 200 F. App'x 439, 442 (6th Cir. 2006), rests on a semantic distinction without a substantive difference. *See Hysten*, *supra*, 296 F.3d at 1181. *Freeman* specifically adopted the *McDonnell Douglas* approach in its "failure to transfer" discussion. 200 F. App'x at 442. Freeman applied for an available position that was filled by another person. *Id*. at 440–41. Although *Freeman* did not specifically mention *McDonnell Douglas*'s second factor, such a discussion of undisputed facts was not necessary to the court's determination and should not be considered—absent any evidence to the contrary—as an intentional jurisprudential omission on the part of the Sixth Circuit of one of the already-adopted *McDonnell Douglas* factors.

Nor does Plaintiff present specific evidence showing he was treated differently from similarly-situated non-Hispanic employees. As a threshold matter, Plaintiff has proffered no evidence of the treatment of any similarly-situated employees—of Plaintiff's class or otherwise. None of the three white employees Plaintiff mentions—Clayton Freiheit, Bill Loessberg, and Merle Moore—are similarly situated to Plaintiff. Both Freiheit and Loessberg were hired before

Plaintiff received the offer letter in question.  Moore contacted Dr. Klepinger upon receipt of the offer letter and was offered employment on December 22, 1999, four years before Plaintiff was denied Foundation employment.  Plaintiff brings to my attention no person who contacted Defendant about transferring employment in the same timeframe as Plaintiff.  Defendant's treatment of the three employees discussed by Plaintiff is too far removed in time to be relevant to Plaintiff's claims.  *See, e.g., E.E.O.C. v. Flasher Co., Inc.*, 986 F.2d 1312, 1320 (10th Cir. 1992) (discussing cases); *Grohs v. Gold Bond Bldg. Prods.*, 859 F.2d 1283, 1287–88 (7th Cir. 1988).

Plaintiff has failed to establish a *prima facie* case of discrimination and summary judgment is therefore appropriate for Defendant on Plaintiff's Title VII claim.  Likewise, Plaintiff has failed to establish Defendant had intent to discriminate against him on the basis of race or national origin for the purposes of Plaintiff's § 1981 claim.  I therefore grant summary judgment on that claim as well.

2.  Second and Third Claims for Relief—Breach of Contract and Promissory Estoppel

Plaintiff alleges Defendant breached an employment agreement with him.  Elements of a breach of contract claim under Colorado law are: (1) the existence of a contract; (2) performance by the plaintiff or some justification for nonperformance; (3) failure to perform by the defendant; and (4) damages to the plaintiff.  *Arenberg v. Cent. United Life Ins. Co.*, 18 F. Supp. 2d 1167, 1172 (D. Colo. 1998).  For the purposes of this summary judgment motion, only the first element is in dispute.

"An enforceable contract requires mutual assent to an exchange, between competent parties, with regard to a certain subject matter, for legal consideration."  *Indus. Prods. Int'l, Inc. v. Emo Trans, Inc.*, 962 P.2d 983, 988 (Colo. Ct. App. 1997) (citing *Denver Truck Exch. v.*

*Perryman*, 307 P.2d 805, 810 (Colo. 1957)). Defendant argues there is no issue of material fact regarding whether there was mutual assent to contract and whether there was adequate consideration to form a contract. I disagree.

The material terms of a contract must be found in the offer and acceptance. *Denver Truck Exch.*, *supra*, 307 P.2d at 810. Where the parties do not share the same interpretation of terms, no meeting of the minds occurs. *Sunshine v. M. R. Mansfield Realty, Inc.*, 575 P.2d 847, 849 (Colo. 1978). Thus, the general rule is that when parties to a contract ascribe different meaning to a material term of the contract, then they have not manifested mutual assent. *Bejmuk v. Russell*, 734 P.2d 122, 123–24 (Colo. Ct. App. 1986).

Plaintiff alleges the offer letter was an offer of employment that remained open indefinitely. In support, Plaintiff notes the offer letter states it is an "offer" with "no time deadline." Defendant argues that it never made an offer: at most, the offer letter was a solicitation. Part of this argument lies in the fact that the terms of the offer letter were not sufficiently definite. The existence of a contract, however, can also be shown by the parties' conduct, their oral statements, and any other evidence illuminating the circumstances surrounding the making of an agreement. *Townsend v. Daniel, Mann, Johnson & Mendenhall*, 196 F.3d 1140, 1145 (10th Cir. 1999). Plaintiff alleges a conversation with Freiheit in 1999 in which Freiheit stated: "There is no time deadline in the letter, so you continue to work until you retire and then you can convert to being a Foundation employee." If the terms of the offer letter were impermissibly vague, Freiheit's subsequent statement was certain enough to constitute an offer for the purposes of summary judgment.

Although a contract requires acceptance and consideration, Colorado law recognizes that justified detrimental reliance on a promise can act as a substitute. *Price v. Pub. Serv. Co. of Colo.*, 1 F. Supp. 2d 1216, 1227–28 (D. Colo. 1998). In light of Plaintiff's seventeen years of employment with the Zoo, an issue of material fact exists as to whether Freiheit could reasonably have expected Plaintiff to rely on this statement to his detriment. Freiheit's statement specifically referred to Plaintiff's planned retirement and—for the purposes of summary judgment—suggests Plaintiff would be entitled to convert to Foundation employment after retiring. As required by Colorado law, the statement was sufficiently specific to enable me to understand the alleged promise and enforce it according to its terms. *Young v. Dillon Cos., Inc.*, 468 F.3d 1243, 1254 (10th Cir. 2006). Plaintiff—by retiring while his 2003 request for conversion was still pending—justifiably relied on Freiheit's statement to his detriment. Further, Defendant provides no evidence that the terms of the offer letter or Freiheit's statement were ever revoked or rescinded. Therefore, summary judgment on Plaintiff's breach of contract and promissory estoppel claims is inappropriate.

### 3. Fifth Claim for Relief—Retaliation under Title VII

Plaintiff claims Defendant's refusal to convert him to a Foundation employee in December 2003 was in retaliation for a discrimination claim he filed in 1999. The 1999 claim alleged Plaintiff had been discriminated against in hiring for the Vice President/Zoo Operations position. The Colorado Civil Rights Division found no probable cause to support the allegation and the EEOC adopted these findings.

Like discrimination, a *prima facie* case of retaliation may be shown by direct evidence or by the *McDonnell Douglas* burden-shifting analysis. *See Annett v. Univ. of Kan.*, 371 F.3d 1233,

1237 (10th Cir. 2004). Plaintiff offers no direct evidence of retaliation. To establish a *prima facie* case of retaliation under a burden-shifting analysis, Plaintiff must demonstrate that (1) he engaged in protected opposition to discrimination; (2) the employer acted in a manner that a reasonable employee would have found to be materially adverse to his employment such that it would dissuade him from making or supporting a charge of discrimination; and (3) a causal connection existed between the employee's protected activity and the employer's materially adverse action. *Burlington N. & Santa Fe R.R. Co. v. White*, 126 S.Ct. 2405, 2415 (2006).

Defendant argues Plaintiff fails to show any specific evidence of a causal connection between the filing of the 1999 charge and the Foundation's failure to hire him in 2003. I agree. Four years past between Plaintiff filing his discrimination claim with the Colorado Civil Rights Division and the EEOC and when the adverse employment action occurred. This is simply too long a time to support an inference of retaliation sufficient to overcome a motion for summary judgment. *See, e.g., Candelaria v. EG&G Energy Measurements, Inc.*, 33 F.3d 1259, 1262 (10th Cir. 1994); *Oliver v. Digital Equip. Corp.*, 846 F.2d 103, 110–11 (1st Cir. 1988); *Burrus v. United Tel. Co. of Kan., Inc.*, 683 F.2d 339, 343 (10th Cir. 1982).

## IV. CONCLUSION

Accordingly, I ORDER that Defendant's Motion for Summary Judgment [**Docket # 64**] is GRANTED as to Plaintiff's first, fourth, and fifth claims for relief in his Third Amended Complaint [**Docket # 20**], and DENIED as to Plaintiff's second and third claims for relief.

Dated: September __26__, 2007.

                               BY THE COURT:

                               ___s/Lewis T. Babcock_____
                               Lewis T. Babcock, Judge